## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

Justices of the Supreme Court during the Period comprised in this Volume.

Hon. WILLIAM D. SIMPSON, Chief Justice.
Hon. HENRY McIVER, Associate Justice.
Hon. SAMUEL McGOWAN, " "

## HENRY v. HENRY.

1. Prior to the adoption of the Code in 1870. judgments had lien until presumed paid, which was in 20 years; under the Code judgments had lien for 10 years. In 1879, an act was passed (17 Stat., 167; *Gen. Stat.*, ? 1831) which declared that "no * * judgment * * shall constitute a lien upon any real estate after the lapse of 20 years from the date of the creation of the same; provided, that if the holder of any such lien * * shall, at any time during the continuance of such lien * * file with the record of such judgment * * a note of some payment or some written acknowledgment of the debt secured thereby, with the date of such payment or acknowledgment, such * * judgment shall be and continue to be a lien for 20 years from the date of the record of any such payment on account or acknowledgment: provided further, that nothing herein contained shall be construed to affect the duration of the liens of judgments as prescribed by section 310 of the Code of Procedure." *Held*, that this act of 1879 could not be applied to judgments recovered after its passage or after the passage

of the Code, and therefore it necessarily applied to judgments prior to the enactment of the Code.

2. A retroactive statute is not unconstitutional unless it impairs the obligation of a contract or divests vested rights under contract or of property. But the act of 1879 simply declared the rule of evidence necessary to establish the acknowledgment which would rebut the presumption of payment of a judgment : and changing a rule of evidence is not an interference with a vested right.

3. If it be necessary that a reasonable time be afforded to a party affected by such change, seven years is certainly a reasonable time.

4. Can an act limiting the lien of a judgment be applied to pre-existing judgments?

5. A judgment was obtained in 1867 and renewed by consent and on written acknowledgment of its non-payment, more than 20 years afterwards, there having been meantime no payments or other written acknowledgments of liability. *Held,* that the judgment and its renewal had no lien.

‹ MR. CHIEF JUSTICE SIMPSON, *dissenting.*

Before KERSHAW, J., Richland, April, 1888.

This appeal was from the following decree :

On the 27th day of February, 1867, a judgment was duly entered in the above entitled case and execution sued out thereon and lodged with the sheriff of Richland County. On the 7th day of October, 1887, a summons was taken out and served on defendant, by his written acknowledgment entered thereon, requiring him to show cause why the original judgment should not be revived and execution had thereon. The defendant in writing consented to the renewal desired, and made affidavit that the judgment was *bona fide* and justly due, and that no part thereof had been paid. Upon this the presiding judge of the court then sitting in the city of Columbia, for said county, made an order on the 17th day of October, 1887, renewing said judgment, which was duly entered and an execution thereon lodged with the sheriff.

On the 7th day of November, 1887, under this execution, and another in favor of a third person against the defendant, junior to that of the plaintiff, real property of the defendant was levied on and sold by the sheriff, who now holds the proceeds of said sale to await the decision of the question here made in regard to the rights of parties in said fund. One Wesley Hornsby and

others hold an execution in the hands of the sheriff next in order of priority to that claimed by the plaintiff, and, by their counsel, demand that the proceeds of said sale be applied to their execution and paid to them.

They contend that the renewal of plaintiff's execution was irregular and void; that the judgment is presumed to be paid by lapse of time; that more than twenty years having elapsed from the time of its original entry to the issue of the summons to renew the same, it had lost its lien on the real estate of the debtor under the act of December 24, 1879, now section 1831 of the General Statutes.

That statute is clear and explicit in its terms. It declares *totidem verbis* that "No mortgage or deed having the effect of a mortgage, no judgment, decree, or other lien on real estate, shall constitute a lien upon any real estate after the lapse of twenty years from the date of the creation of the same." There is a proviso having the effect of extending the lien for twenty years from the date of record of any payment or acknowledgment of the same during the continuance of said lien entered in accordance with the act, but no such record was made or entered, and the positive provisions of the act above recited apply to this case without any qualification whatever. The later legislation on the subject, now embodied in section 310 of the Code of Procedure, and other sections relating to the subject, do not apply to judgments obtained prior to 1870. *Ita lex scripta,* and it is unnecessary to consider the other questions discussed, though full of interest.

It is adjudged, that the rule on the sheriff be discharged, and that the plaintiff pay the costs thereof—ten dollars.

The relators, the plaintiffs in the first judgment, appealed on the following grounds:

I. It is respectfully submitted that his honor erred in holding that inasmuch as more than twenty years had elapsed from the time of the original entry of the judgment in favor of John P. Henry to the issuing of the summons to renew the same, said judgment "had lost its lien on the real estate of the debtor

under the act of December 24, 1879, now section 1831 of the General Statutes."

II. It is respectfully submitted that his honor erred in holding that said act, known as section 1831 of the General Statutes of South Carolina, was retroactive in any regard whatever; and if said section be susceptible of any such interpretation, then his honor should have held that it was null and void for the reason that, in so far as it affected the question at bar, there was a divesting of vested rights.

III. It is respectfully submitted that his honor erred in not holding that the order renewing the execution (although it was obtained after 20 years had elapsed from the date of the judgment) made said judgment in favor of John P. Henry a good, valid, subsisting lien from the date of the entry thereof on the 27th of February, 1867.

*Mr. Andrew Crawford*, for appellants.

*Mr. John T. Rhett*, contra.

April 15, 1889.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The sole inquiry raised by this appeal is as to the proper construction of the act of 1879 (17 *Stat.*, 167), entitled "An act to declare the law in relation to liens on real estate," incorporated in the General Statutes as section 1831. That section reads as follows : "No mortgage or deed having the effect of a mortgage, no judgment, decree, or other lien on real estate, shall constitute a lien upon any real estate after the lapse of twenty years from the date of the creation of the same : Provided, that if the holder of any such lien or liens as aforesaid shall, at any time during the continuance of such lien, cause to be recorded upon the record of such mortgage, deed having the effect of a mortgage, or shall file with the record of such judgment, decree, or other lien, a note of some payment on account or some written acknowledgment of the debt secured thereby, with the date of such payment or acknowledgment, such mortgage, deed having the effect of a mortgage, judgment, decree, or other lien, shall be and continue to be a lien for twenty years

from the date of the record of any such payment on account or acknowledgment: Provided, further, that nothing herein contained shall be construed to affect the duration of the liens of judgments as prescribed by section 310 of the Code of Procedure."

This provision thus inserted in the General Statutes of 1882 is, in substance and effect, identical with that found in the act of 1879; for although the phraseology of the second proviso was altered, yet such alteration did not affect the substantial meaning. In the act of 1879, the language of that proviso is: "That nothing herein contained shall be construed to affect the duration of the liens of judgments as prescribed by the fourteenth section of an act entitled 'An act to alter and amend the Code of Procedure, being title V., part III., of the General Statutes,' approved March 8, 1875," which act was a mere repetition *in totidem verbis* of the act of 1873 (15 *Stat.*, 495), and was passed under the unfounded apprehension, as it proved (*Arnold* v. *McKellar,* 9 S. C., 335), that the act of 1873 had failed to become a law. Now, as section 14 of the act of 1875 was, so far as the duration of the lien of a judgment is concerned, substantially the same as section 310 of the Code as it read in 1882, the only difference being in certain changes in the phraseology rendered necessary by the difference in the dates of the two enactments, it seems to me that there is no substantial difference between the second proviso as found in the act of 1879, and as it is expressed in section 1831 of the General Statutes of 1882.

The obvious effect, therefore, of this proviso, whether read as it is found in the act of 1879 or in section 1831 of the General Statutes, was to exempt all judgments recovered after the adoption of the code from the operation of the legislation found in the preceding part of the act or section; for it expressly declares "that *nothing* herein contained shall be construed to *affect* the *duration* of the liens" of such judgments. It cannot be construed either to extend or limit the duration of the lien of such judgments, for to do either would be to *affect* the *duration* of the lien, and that is expressly forbidden.

As I understand, it is conceded that the act of 1879 could not affect the duration of the lien of judgments recovered between the adoption of the code and the passage of the act of 1879, but it is

suggested that it may affect the lien of judgments recovered after the passage of the act of 1879, by extending the lien of such judgments from ten years, as prescribed by the code as it then stood, to twenty years. But besides the fact that this would be a strained construction of the act of 1879, the manifest purpose of which was to *declare* the limit and not to extend the duration of the lien of judgments, which possibly might be permissible with a view to avoid giving the act a retroactive effect, it seems to me that it would be impossible to give the act such a construction without violating the express prohibition contained in the proviso. The code had expressly prescribed ten years as the duration of the lien of all judgments recovered after the 25th of November, 1873, and when it was declared by the proviso under consideration that the act should not be construed to affect the duration of the liens of judgments as prescribed by the code, I do not see how the court, in the face of this express declaration of the legislative will, can put such a construction upon the act as would necessarily affect the duration of the lien of a judgment recovered after the date specified by extending its duration from ten years *as prescribed by the code* to twenty years, as might possibly be inferred from the terms of the act; and it seems to me that the proviso was inserted for the very purpose of avoiding any such inference.

If, therefore, the act of 1879 cannot be applied to judgments recovered after the adoption of the code, the intention must necessarily have been to refer to those recovered prior to the adoption of the code, for there are none others to which it could apply ; and the terms of the act itself show that such was the intention of the legislature, for they were manifestly dealing with such judgments as had a lien for as long a period as twenty years, and *ante*-code judgments were the only judgments which ever had a lien for that length of time, and they must necessarily have been the class of judgments to which the legislature referred ; and the only class, as all others are expressly exempted from the operation of the act. It is true that this view gives the act a retroactive effect ; and it is equally true that the well settled rule is that a statute must never be given a retrospective operation unless such a construction is required by the express terms of the statute or

by necessary implication. Now, while the act under considera-
tion contains no express words declaring that it shall have a
retroactive effect, yet it seems to me that the intention that the
act should have such an effect is necessarily implied; for, as
we have seen, it could not otherwise have any effect at all;
for if it cannot apply to any judgment recovered after the adop-
tion of the code, then necessarily it must apply to judgments
recovered before that time.

If, then, the intention of the legislature was that the act should
be retrospective, it will only be necessary to inquire whether it is
within the power of the legislature to pass such an act. There
is nothing in the constitution of the United States or of this
State which forbids the general assembly from passing a retro-
spective act, provided such act does not impair the obligation of
a contract, or divest vested rights resting on contract, or vested
rights of property. *McLure* v. *Melton*, 24 S. C., 570, and the
cases there cited. The simple fact, therefore, that the act is
retrospective does not render the act unconstitutional. Hence
before the act can be declared unconstitutional, which all the
authorities declare can only be done in a clear case, it must ap-
pear that the necessary effect of the act is to impair the obliga-
tion of a contract, or divest some vested right resting on contract,
or some vested right of property. If, therefore, any construc-
tion can be placed upon the act which will not effect any of those
results, it seems to me that it is the duty of the court to adopt
such construction.

To determine this question it is necessary to inquire into the
scope, purport, and object of the act; and for this purpose we
must ascertain what was the old law which this act was designed
to amend. Conceding that under that law there was no limit to
the duration of the lien of a judgment or mortgage, yet it was
well settled that after the lapse of twenty years the debts secured
by such liens were presumed paid and thus the liens were extin-
guished, but still such presumption could be rebutted by proof of
some payment on account, or some such positive acknowledgment
as would imply a promise to pay. This being the state of the
law, it seems to me that the object of the act was not to limit the
duration of such liens, but simply to *declare* (and it is noticeable

that such was the word used in the title) what should be the evidence of such payment or new promise as would be sufficient to rebut the presumption of payment. Under the old law neither a judgment nor a mortgage after the lapse of twenty years constituted a lien, because of the presumption of payment, which though susceptible of being rebutted by evidence, the nature and kind of such evidence was not distinctly defined, and the object and effect of the act was to *declare* what should be, after the passage of the act, the kind of evidence necessary to rebut the presumption of payment. The act in substance declares that no judgment or mortgage shall constitute a lien after the lapse of twenty years, unless some note of payment on account or some written acknowledgment of the debt is recorded on the record of the mortgage, or filed with the record of the judgment; the only alteration being in *the rules of evidence,* not in any wise affecting the previously existing *right.*

It seems to me that this is the proper construction of the act; and, at all events, it is capable of such a construction; and if so, then, with a view to avoid a conflict with the constitution, it is the duty of the court to adopt such construction. All the authorities agree that the right to have one's controversies determined by the rules of evidence existing at the time the contract is entered into is not a vested right, and therefore may be changed by retroactive legislation without any violation of the constitution. *Cool. Con. Lim.,* 367–8, and 288, with the cases there cited. See also *Endlich on Interpretation of Statutes,* section 284, especially the notes on pages 383–4, where many cases sustaining the proposition stated are cited. It there appears that after the passage of Lord Tenterden's act requiring that the promise relied upon to bar the statute of limitations must be in writing, it was held that such legislation was applicable to pre-existing contracts. This is, in principle, identical with the present case. It is true that some of the cases hold, and perhaps rightly, that such legislation cannot be applied to a pre-existing contract, unless a reasonable time has been afforded the party to be affected thereby, to conform to the requirements of the new law; but even conceding such a qualification of the rule, there is nothing to prevent its application here, for the appellant certainly had a

reasonable time to conform to the new law; for the act was passed in 1879, upwards of seven years before the expiration of the twenty years from the date of the entry of his judgment in February, 1867.

Under this view of the case, the important and interesting question (as to which a good deal might be said) whether an act limiting the duration of the lien of a judgment can be applied to pre-existing judgments without a violation of the constitution, does not arise. Nor is it necessary to consider the effect of the act of 1885 (19 *Stat.*, 229), amending section 310 of the Code.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON, *dissenting.* Samuel G. Henry, the defendant, on the 27th February, 1867, confessed a judgment to John P. Henry, and execution was issued thereon immediately thereafter. Nothing more was done, however, until October 17, 1887, 20 years and 7 months after the confession was entered as above, when proceedings were instituted to renew said execution, upon which an order was obtained renewing the same by consent of defendant, who accompanied the summons served upon him with an affidavit stating that said debt was founded upon a *bona fide* and valuable consideration; that he had frequently acknowledged it during the past twenty years as a *bona fide* debt with lien on his real estate, and as remaining wholly due and unpaid. Shortly thereafter the real estate of the defendant was sold under this execution, and another issued on the Watkins judgment, in the office of the sheriff at that time, to Mr. Crawford, the attorney of the plaintiff, who claimed to have his bid credited on the aforesaid judgment. This the sheriff declined to allow, inasmuch as still another judgment, known as the Hornsby judgment, of prior date to the Watkins judgment, was found in the office, which claimed the proceeds of the sale, on the ground that the renewal of the execution of plaintiff in October, 1887, more than 20 years after the entry of the judgment was illegal, the judgment having been barred by the lapse of time; that said Hornsby judgment should have the proceeds of the sale over the

Watkins judgment, because it was prior in date thereto, which being patent, the parties representing the Watkins judgment had abandoned all claim to said proceeds.

Upon the sheriff being ruled and the matter coming up before his honor, Judge J. B. Kershaw, an order was granted discharging the rule, with $10 costs; his honor holding that the act of December 24, 1879, now section 1831, where it is declared, "That no mortgage or deed having the effect of a mortgage, no judgment, decree, or other lien on real estate, shall constitute a lien upon any real estate after the lapse of twenty years from the date of the creation of the same," applied to the case and controlled it.

The appeal alleges error to his honor : 1st. That he erred in holding that section 1831, General Statutes, applied to the case, thereby giving said act a retroactive effect. 2nd. If it was intended to have a retroactive effect, "then it was null and void, for the reason that, in so far as it affected the question at bar, there was a divesting of vested rights."

The questions before us are, did the act—section 1831, *supra*—have a retroactive effect ?   And if so, would its operation be to divest vested rights if held valid ?

Under the old law before the recent war between the States, there was no limit of time as to the lien of judgments.   When once obtained and attached by a proper entry of the judgment, the lien continued until the judgment was paid either actually or by a conclusive presumption arising from the lapse of time, which usually took place by the running of twenty years ; or at least a period of twenty years with nothing done in the meantime, gave such an artificial force to a presumption of payment, that it was held conclusive, unless overthrown by extraordinary circumstances, such as would check the statute of limitations and prevent it from being a bar to the recovery of a debt, subject to said statute.   Now, in this case the question whether the presumption of payment had assumed this artificial character, and whether, if so, the facts relied on were sufficient to overthrow it, did not arise, and it was not passed upon by his honor.   But the case was decided upon the ground that section 1831, General Statutes, had repealed the old law, and expressly *in totidem verbis* provided that no judgment, whether under the old law or the present

should have lien for more than 20 years from the date of the creation of the same. So that the question, as we have stated, is, was it the intention of the act to retroact?

Now, while it is true that the general assembly may pass retroactive laws when they do not impair the obligation of contracts nor divest vested rights, yet the intention to be retroactive must appear clearly and distinctly. In fact, the rule seems to be, as derived from the weight of the decisions and utterances from judicial writers, as is said by Mr. Endlich: "That even in the absence of constitutional obstacles a construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal, and unavoidable implication from the words of the statute taken by themselves and in connection with the subject matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention." *End. Interp. Stat.*, § 271. Examining section 1831 under the light of this rule, we certainly find no express words giving it any retrospective effect, nor can this be inferred by a "necessary, unequivocal, and unavoidable implication" from any words used therein.

But it is asked if the section does not refer to these older judgments, what does it refer to? It must be remembered that this section is taken from the act of 1879. At that time the act of 1873, in reference to the lien of judgments, had been passed and was then of force. This act had provided that judgments should have lien only for 10 years, with the right of renewal within three years after the 10, with like lien as the original for 10 years, and so on, we suppose, *ad infinitum.* But this act of 1873 was expressly limited to judgments obtained since 1870. It left old judgments obtained before that time untouched and under the old law. Now, where is the difficulty in applying section 1831 to judgments obtained after the passage of the act of 1879, wherein this section was first enacted, thus making it entirely prospective, and thus leaving judgments as to their liens obtained under the old law and those obtained under the act of 1873 intact, and to be governed by the law as it stood when said judgments were ob-

tained? Such a construction would be just to all parties, and would harmonize with the idea of prospective application which belongs to statutes generally, and necessarily so unless the implication is unavoidably otherwise. May not the intention have been to prevent renewals from extending liens beyond 20 years as to future cases, which might be done under the provisions of the act of 1873?

And, besides, we think there is foundation for the position taken by appellant, that to give this section a retroactive operation would be divesting vested rights. Previous to the passage of this act the judgment in question had an unlimited lien as to time upon the property of the debtor. This right had been secured to the creditor by the law under which he had acted and had rested. Why was it not a vested right? What more was required of him to make it such a right than he had done? The law had said to him, Obtain your judgment and you shall have a lien until the judgment is paid. It is true that may not have been a contract, the obligation of which was forbidden by the constitution of the United States as to impairing the obligation of contracts, but it seems to us that it approaches very closely a vested right, which is unassailable, equally with obligations of contracts.

The case of *Moore* v. *Holland* (16 S. C., 15) does not conflict with this view. There a decree had been obtained after the 1st of March, 1870, which denied to final judgments and decrees a lien on property, but the cause of action upon which the decree was founded existed before the act of 1st of March, 1870, when judgments if obtained in such cause had lien. And the owner of the decree contended that to deprive him of the right of lien in said decree under the act of 1st March, 1870, would be impairing the obligation of the contract. This court, however, said, No; the lien which you might have acquired if you had reduced your claim to judgment before the act of 1870 was no part of the contract, but was a remedy attaching to the judgment after it was obtained, and it being taken away before judgment, there was no impairing any obligation or legal tie that bound the debtor to the performance of his contract. In substance, that this legal tie or obligation had not attached, nor was there any pro-

mise that it should attach. It was a mere inchoate right which the plaintiff had, and which, if he had reduced his claim to judgment before the act of 1870, would have become fixed. But this not having been done, and the general assembly having the power to alter the law as to future judgments, and having done so by the act of 1870, it should govern. The case at bar differs from Moore v. Holland, *supra*, in the material fact that, while the law allowing liens had been repealed before the judgment was obtained in Moore v. Holland, and another act passed denying all lien, in the case at bar the judgment was obtained while the law allowing unlimited lien was of force, and the act of 1879, destroying this lien, was passed long after it had attached and had become a fixed fact.

The acts of 1873 and of 1885 have no bearing upon the questions involved, and therefore this opinion need not be prolonged by a discussion of said acts.

For these reasons I cannot concur in the opinion of the majority.

Judgment affirmed,